UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLI REISINGER

               Plaintiff,                          No. 07-CV-13208-DT

vs.                                                    Hon. Gerald E. Rosen

ANN ARBOR NIGHTS, INC.
(d/b/a/ Days Inn of Ann Arbor),
A Michigan corporation,

               Defendant.
_____/

OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on     November 25, 2008

        PRESENT:  Honorable Gerald E. Rosen
                           United States District Judge

I. INTRODUCTION

This Title VII/Elliott-Larsen sexual harassment/hostile work environment/retaliation case is presently before the Court on the Motion for Summary Judgment filed by Defendant, Ann Arbor Nights, Inc. Plaintiff has responded to Defendant's Motion and Defendant has replied. Having reviewed and considered the parties' briefs and supporting evidence, the Court determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff Ashlie Reisinger is a former hourly housekeeper employed by Defendant, Ann Arbor Nights, doing business as Days Inn of Ann Arbor ("Days Inn"). Plaintiff was employed by Days Inn for three weeks prior to being discharged. During that time, Plaintiff worked a total of nine days.

On December 30, 2005, Plaintiff filled out an application with Days Inn Hotel. She was interviewed the same day by the head housekeeper, Tracie Lazette, and the front desk manager, Sam Yatim. After the interview, Yatim and Lazette hired Plaintiff as a part-time housekeeper.

Days Inn's training policy requires newly hired housekeepers to train under experienced housekeepers for three days before they are assigned to clean rooms by themselves, unless they have previous experience, in which case, the new hires would train for only a half-day. New hires shadow a veteran housekeeper during the training period to learn how the rooms are to be cleaned; they observe how to clean the room properly and assist the veteran housekeeper. Although Plaintiff had previous experience as a hotel housekeeper, it is unclear from the record how many days she was required to train.

The head housekeeper, Lazette, was on vacation for the first week of Plaintiff's employment, and the record does not reflect who trained Plaintiff on the exact days she worked. However, at some point, Plaintiff trained with two of the veteran housekeepers, Chantel and Tina. When Lazette returned from vacation, Chantel and Tina informed her that Plaintiff was not cleaning her rooms properly, that she was leaving things on the floor, leaving trash underneath the comforters and beds, and forgetting a number of items that were supposed to go in the room. Ms. Lazette, in turn, informed her boss, Mr. Yatim, of the complaints about

Plaintiff's performance. Yatim recalls Lazette telling him Plaintiff was "very slow," but told Lazette to "give her time because she [was] new." [Dep., of Sam Yatim p. 14.]

According to Lazette, she did not think that Plaintiff's performance was so inadequate that she would be fired. In fact, the only day Lazette worked with Plaintiff she was able to correct Plaintiff's mistakes and teach her to do her job properly. Furthermore, Lazette claims she did not request that Plaintiff be terminated. Additionally, Yatim testified that he had no personal knowledge of any poor performance on the part of Plaintiff that would justify firing her. Yatim further testified that housekeepers were typically given two warnings by the head housekeeper before being fired for poor performance.

The Alleged Harassment

Plaintiff's first day of work was on Thursday, January 5, 2006. She clocked in at 9:03 a.m. and began training with a veteran housekeeper. Plaintiff shadowed the veteran for several hours and then vacuumed the hallways at the end of the day alone. [*See* Plaintiff's Dep., pp. 24-25.] While she was vacuuming the hallway, Tim Yasser, the maintenance man, allegedly approached Plaintiff and started talking to her. *See id.* at 27. He asked her if she wanted anything to drink or if she needed anything. Plaintiff told Yasser no, but he continued to ask her if she wanted anything. *See id.* Despite Plaintiff telling him she did not want anything, Yasser went downstairs and brought her back a juice drink. *See id.* Plaintiff again told Yasser that she did not want the drink.

After Plaintiff had finished all her work, she told the front desk manager, Yatim about the "juice incident" with Yasser and informed him that it made her feel uncomfortable.[1] *See id.* at 28. According to Plaintiff, Yatim said, "I wouldn't worry about him, he's got kids and a wife."

---
[1] Yatim denies that Plaintiff ever complained to him about Yasser's conduct. [Dep., of Sam Yatim pp. 14-15.]

*Id.* at 28. Plaintiff admits she did not report this incident to the Head Housekeeper or the General Manager. *See id.* at 30. However, Plaintiff considered Yatim to be her supervisor, and in fact, the head housekeeper, Lazette reported to Yatim. [*See id.* at 28, 31; Dep., of Tracie Lazette p. 9.]

The second incident Plaintiff complains of occurred either on Thursday, January 12, 2006, or Saturday, January 14, 2006.[2] On that day, Plaintiff came in and started cleaning the rooms assigned to her when she discovered that a sliding glass door was broken. She told Lazette about the broken door and stayed in the room until someone came to fix it. [*See* Plaintiff's Dep., p. 34.] Shortly thereafter, Yasser entered the room and starting talking to Plaintiff. According to Plaintiff, the conversation started off "normal," but then, "all of the sudden out the blue," Yasser asked her to "make sex" with him and grabbed her arm. *See id.* Plaintiff said, "no" but Yasser continued to ask, "why, why not?" Plaintiff responded by going out into the hallway where there were cameras (Plaintiff was previously instructed by Lazette to go into the hallway if she ever had any problems so that whomever was watching the cameras could help her). *See id.* at 35. Plaintiff said Yasser did not prevent her from moving into the hallway or restrain her in anyway. Immediately after the incident, Plaintiff reported the harassment to Yatim. *See id.* at 36. Shortly thereafter, Plaintiff told the head housekeeper what Yasser had done.[3]

---

[2] Plaintiff alleges this incident happened on the day before her last day, which would have been Saturday the 14th. [Plaintiff's Dep., pp. 38-39.] However, Lazette claims that the incident occurred on Thursday the 12th. [*See* Dep., of Tracie Lazette p. 28.]

[3] It is unclear to exactly whom Plaintiff reported the incident. Plaintiff testified she is not sure who the "head housekeeper" is and only remembers the name Tracie. She testified that she trained with "Tracie" the "head housekeeper" on her first day, however, Tracie Lazette testified that the first time she worked with Plaintiff was Thursday, January 12, 2006. [*See* Plaintiff's Dep., pp. 24-25; Dep., of Tracie Lazette p. 6.] Further, Lazette claims that Plaintiff never complained to her about Yasser. Id. at 8.

Lazette denies that Plaintiff ever personally complained to her about Yasser. [*See* Dep., of Tracie Lazette p. 8.] However, Lazette does recall another housekeeper, Chantell, informing her that Plaintiff had complained about Yasser saying she was pretty. [*See id.* at 9.] In response, to this complaint by Chantell, Lazette went right to her manager, Mr. Yatim, and informed him about Yasser's alleged comment. [*See id*.] According to Lazzette, Yatim said he would take care of the problem. [*See id*.] But, Yatim does not recall Lazette informing him of any complaints regarding Yasser and Plaintiff. In fact, Yatim does not recall Plaintiff ever complaining about Yasser. [*See* Dep., of Sam Yatim p. 15.]

Plaintiff's Last Day of Employment:

According to Plaintiff, she had the next four days off. [4] When Plaintiff reported to work on Thursday, January 19, 2006, Ms. Lazette told Plaintiff that she was being terminated for "stirring up" problems. [Plaintiff's Dep., 38-38.] However, Ms. Lazette denies that she fired Plaintiff[5] and maintains that when Plaintiff came in on the 19th she said she was "tired, didn't feel good, and needed to go home." [Dep., of Tracie Lazette p. 14.] On Plaintiff's last day of employment, Thursday, January 19th, she was clocked in for a total of nine minutes. [*See* Defendant's Exhibit E, Plaintiff's Timecard.]

At a later time, Yatim called Plaintiff by mistake, allegedly to see if she could work, then realized she was no longer employed by Days Inn. It is unclear if Yatim spoke to Plaintiff when he called or just left her a message. However, Plaintiff called Yatim back and recorded their conversation. Yatim confirmed during his deposition that the voices on the recording belonged

---

[4] According to Ms. Lazette, Plaintiff was actually scheduled to work Tuesday the 17th and Wednesday the 18th, but she called in sick on both days. [Dep., of Tracie Lazette p. 13.]

[5] Ms. Lazette testified that she does not have the authority to hire or fire housekeepers. [Dep., of Tracie Lazette pp. 7, 11.] However, both Mr. Yatim and the general manager, Ed Savaya, testified that Lazette does have the power to hire and fire housekeepers. [Dep., of Sam Yatim p. 26; Dep., Ed Savaya pp. 10-11

5

to Plaintiff and himself. During the conversation, Plaintiff asked Yatim, "do you remember when [Yasser] gave me a hard time and ah you know he kept messing with me and um flirting with me and stuff and trying to ask me to do stuff?" Yatim said he did not remember and asked what was going on. Plaintiff responded by telling Yatim that her feelings were hurt because she came to him and he never did anything about it. Yatim then told Plaintiff that Yasser was fired because he told the general manager about Yasser's behavior. However, the general manager, Ed Savaya, testified that Yasser was not fired until Savaya received Plaintiff's EEOC complaint.

EEOC Charge:

On or about May 12, 2006, Plaintiff filed a timely charge with the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment based and retaliation. [*See* Complaint pp. 2-3.] The EEOC conducted an investigation and issued Plaintiff a right-to-sue letter on May 2, 2007. Plaintiff received the EEOC letter on May 7, 2007.

In defending against Plaintiff's EEOC charge, Defendant submitted a "Statement of Position" that asserted: "Claimant was employed as a part time housekeeper at the Hotel during early January of 2006. She began training in early January, but was not progressing satisfactorily. She worked only a few days before her employment was terminated on or about January 17, 2006. The reason for her termination of employment was for not showing up for work on time, taking long breaks that were not approved, and for poor performance in her housekeeping duties." [Plaintiff's Exhibit 2, Statement of Position, pp. 1-2.]

On July 31, 2007, Plaintiff initiated the instant action. Plaintiff's Complaint alleges sexual harassment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. [Count I], and the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* [Count III]. Plaintiff's Complaint also alleges retaliation in violation of Title VII of the Civil Rights Act, 42

U.S.C. § 2000e *et seq*. [Count II]. After the close of discovery, Days Inn filed the instant Motion for Summary Judgement.

III. DISCUSSION

A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[6] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> \* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be

---

[6] "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

7

met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

B. <u>PLAINTIFF HAS FAILED TO MAKE OUT A SEXUALLY HOSTILE WORK ENVIRONMENT CLAIM UNDER FEDERAL OR STATE LAW</u>

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his[/her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir.1997), *cert. denied*, 522 U.S. 865 (1997).

Sex discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*

*v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). In order to alter the condition of the plaintiff's employment, the harassment must affect a "term, condition, or privilege" of the employment. *Id*. Moreover, the plaintiff must prove that the discrimination complained of was based on sex; it is not enough to show that the harassment complained of occurred between a man and a woman, nor is it sufficient to prove that the conduct at issue was merely tinged with offensive sexual connotations. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

Both an objective and subjective test must be met: the conduct complained of must be severe or pervasive enough to create a work environment that any reasonable person would find hostile or abusive, and the victim must subjectively regard the environment as abusive. *Harris,* 510 U.S. at 21-22; *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir.2000). Whether an environment is hostile or abusive can be determined only by looking at the totality of the circumstances. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

In determining whether discriminatory conduct is sufficiently "severe or pervasive" to create a hostile work environment, the *Harris* Court directed the lower courts to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 510 U.S. at 23. However, "The Supreme Court has consistently held that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Newman v. Fed. Express Corp.,* 266 F.3d 401, 405 (6th Cir.2001) (quoting *Faragher,* 524 U.S. at 788).

Michigan law is similar. The Michigan Elliott-Larsen Civil Rights Act broadly defines sexual discrimination as including sexual harassment, and includes within its definition of sexual harassment, conduct which creates a hostile work environment:

> Discrimination because of sex includes sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:
>
> * * *
>
> (iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive . . . environment.

M.C.L. § 37.2103(h).[7]

The Michigan Supreme Court has determined that an objective reasonableness standard must be utilized to determine whether a hostile work environment exists under the Michigan Elliott-Larsen Act. *Radtke v. Everett*, 442 Mich. 368, 398, 501 N.W.2d 155, 169 (1993). Thus, a sexually hostile work environment claim under Michigan law is actionable "only when, in the totality of circumstances, the work is so tainted by sexual harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to

---

[7] The Michigan Act differs from Title VII in one respect: Whereas the "based on sex" requirement of a Title VII hostile work environment claim includes sexually related remarks and conduct, as well as non-sexual conduct "where it evinces anti-female animus," *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999), a sexual harassment hostile work environment claim under the Elliott-Larsen Act does not. Where there are no "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct or communication *of a sexual nature*," the plaintiff fails to make out a claim of sexual harassment under the Elliott-Larsen Act. *Haynie v. State of Michigan*, 468 Mich. 302, 313-14, 662 N.W.2d 129, 135-36 (2003) (overruling *Koester v. Novi*, 458 Mich. 1, 580 N.W.2d 835 (1998)). This distinction, however, is not relevant in this case as Plaintiff's claims are predicated, at least in part, on allegations of sexually related remarks and conduct which would be covered under both Title VII and the Michigan statute.

an intimidating, hostile, or offensive work environment." *Id.*[8] To satisfy this requirement, it is generally accepted that the plaintiff must establish that the complained sexual harassment was "severe" or "pervasive." *Dix v. Siemens Information Systems, Inc.,* 82 F.3d 417, 1996 WL 156695 (6th Cir. 1996) (applying Michigan law).

To make out a *prima facie* case of hostile work environment based on sexual harassment by a co-worker under Title VII, the following elements must be demonstrated:

> (1) [the plaintiff] was a member of a protected class; (2) [the plaintiff] was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir.1999).[9]

---

[8] As the Michigan Supreme Court explained in *Radtke*,

> [A] reasonableness inquiry is necessary to fulfill the purpose of the [Michigan Civil Rights] act. As noted, the purpose of the act is to combat serious demeaning and degrading conduct based on sex in the workplace, and to allow women the opportunity to fairly compete in the marketplace. The reasonableness inquiry, (i.e., objectively examining the totality of the circumstances) in a hostile work environment action, is simply a method of objectively determining whether a hostile work environment existed. The alternative would be to accept all plaintiffs' subjective evaluations of conduct, thereby imposing upon employers liability for behavior that, for idiosyncratic reasons, is offensive to an employee. We believe that such a result is contrary to both the plain meaning of the statute, as well as the statute's overall purpose. [Citation omitted.] To hold the contrary would delimit the act and ensure a deluge of unwarranted litigation in contravention of the act's purpose.

442 Mich. at 387, 501 N.W.2d at 164.

[9] The same elements are required to make out a *prima facie* claim under the Michigan Elliott-Larsen Act. Under the Michigan Act, it must be shown that:

> (1) the employee belonged to a protected group;
> (2) the employee was subjected to communication or conduct on the basis of sex;
> (3) the employee was subjected to unwelcome sexual conduct or communication;
> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
> (5) respondeat superior.

*Chambers v. Trettco,* Inc., 463 Mich. 297, 311, 614 N.W.2d 910, 915 (2000) (quoting, *Radtke v. Everett*, 442 Mich.

Turning to the instant action, and viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish the fourth element of a *prima facie* case against Days Inn. The evidence before the Court is insufficient to support a finding that the comments and conduct complained of were "severe or pervasive" enough to create an objectively hostile work environment under Title VII or Michigan law.

As noted, the Court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Harris,* 510 U.S. at 23; *Bowman v. Shawnee State University*, 220 F.3d 456, 463 (6th Cir. 2000). "The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether -- taken together -- the reported incidents make out such a case.

A *prima facie* case of sexual harassment Under Title VII begins by showing that the plaintiff "was a member of a protected class." *Fenton,* 174 F.3d at 830. Plaintiff meets the first element of the action because she is a member of a protected class -- she is an employee who has been the object of an unwelcomed sexual advance on the basis of her sex.

Plaintiff also meets the second element of the action because she alleges that she was subjected to unwelcome harassment. The proper inquiry under this element is whether Plaintiff "by her conduct indicated that the alleged sexual advances were unwelcome." *Meritor,* 447 F.3d at 68. Here, Plaintiff told Yasser that she would not "make sex" with him, and further conveyed that message by pulling away from Yasser and walking into the hallway. [Plaintiff's Dep., 34-35.] Therefore, Plaintiff's conduct indicated that Yasser's sexual advances were unwelcome.

---

368, 382-3, 501 N.W.2d 155, 162 (1993)).

Plaintiff also meets the third element of the action because she alleges that the complained harassment was based on sex. Plaintiff need only show that "but for the fact of her sex, she would not have been the object of harassment." *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982). Here, Plaintiff complains of two separate occasions when Yasser allegedly harassed her, once when he brought her juice, and a second time when he asked her to "make sex with him." During the second incident, Yasser was seeking unwelcome intimate sexual conduct with Plaintiff. The proposal at issue was obviously sexually motivated. But for her gender, Yasser would not have attempted to solicit sex from Plaintiff. Therefore, Plaintiff's allegations are sufficient to meet the minimum *prima facie* showing necessary to establish that the conduct in question was based on sex.

However, Plaintiff has failed to meet the fourth element of the action. Plaintiff has not come forward with sufficient evidence to establish that the harassment unreasonably interfered with the her work performance or created a hostile or offensive work environment that was severe and pervasive. The only evidence presented that Plaintiff's work performance was interfered with was that Plaintiff left her designated work area and sought out management to report Yasser's conduct after the second incident. [*See* Plaintiff's Dep., p. 34-35.] Plaintiff did not testify that following this encounter with Yasser that she was unable to continue working or that her performance declined as a result of the second incident. In fact, Plaintiff continued to work as usual after the incident. [*See* Plaintiff's Dep., p. 50-52] Therefore, Plaintiff failed to demonstrate that the harassment *unreasonably* interfered with her work performance.

Additionally, Plaintiff failed to establish that the harassment created a hostile or offensive work environment that was severe and pervasive. Comments or conduct that is "merely offensive" will not establish a hostile work environment. *See Harris,* 510 U.S. 21. In the instant

13

action, Plaintiff's complains that on her first day of work Yasser repeatedly asked her if she wanted something to drink or needed anything. While it was beyond the scope of his job as a maintenance man to bring her a juice box, Yasser's conduct was not sexual in nature, nor did it evidence an anti-female animus. Moreover, with regard to the juice incident, Yasser's conduct towards Plaintiff cannot be considered harassment based on Plaintiff's sex. Furthermore, while Yasser's conduct may have made Plaintiff subjectively feel uncomfortable, this "juice incident" would not make a reasonable person conclude that Plaintiff's work environment was sexually hostile or abusive.

Although the second incident Plaintiff complains of does fall within the ambit of sexual harassment,[10] this single incident does not rise to the level of creating a hostile work environment. During this second encounter, Yasser entered a room where Plaintiff was waiting for someone to clean up a broken sliding glass door. He proceeded to strike up a normal conversation with Plaintiff, when according to her "out of the blue" he grabbed her arm and asked her to "make sex" with him. While Yasser's conduct was certainly inappropriate and highly offensive -- and clearly sexual -- this single incident of harassment does not establish a hostile work environment.

It is universally accepted by federal courts that isolated incidents, unless extremely serious, are not sufficient to support a hostile work environment claim. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 790 (6th Cir.2000); *Bowman,* 220 F.3d 463; *Newman,* 266 F.3d 405; *Faragher,* 524 U.S. at 788. For example, extremely traumatic experiences, such as rape, violent sexual assault, and situations in which the Plaintiff is physically restrained by the

---

[10] Sexual harassment includes "[unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Meritor, supra* 477 at 65 (quoting EEOC guidelines).

harasser in an attempt to coerce sexual relations, may create a hostile work environment. *Radtke v. Everett,* 422 Mich. 368, 395 (1993). However, the harassment Plaintiff complains of does not fall into the category of rare, actionable cases where a "very severe single incident" will establish a violation of Title VII or the Elliott-Larsen Act. *See id.*

Under the totality of the circumstances, one incident of a brief sexual communication by a non-supervisory co-worker -- even when coupled with the prior offer to bring Plaintiff juice -- does not rise to the level of an "extremely serious" isolated incident. In the instant action, although Yasser allegedly grabbed her arm, Plaintiff was not restrained or physically assaulted by him, nor did he threaten to force Plaintiff to have sex with him. He simply propositioned her.

In fact, several cases in the Sixth Circuit have found conduct significantly more severe and pervasive to be legally insufficient to create a hostile work environment. *See Morris,* 201 F.3d at 790 (holding that an alleged request for sexual favors in return for a better performance evaluation coupled with calling Plaintiff "hot lips," and telling sexual jokes, did not amount to severe and pervasive harassment); *Gwen v. Regional Transit Authority*, 7 Fed Appx 496 (6th Cir. 2001) (holding that a single incident in which co-worker exposed his genitals to female bus driver and made rude comments was insufficient to establish claim of hostile work environment); *Burnett v. Tyco Corp.,* 203 F. 3d 980, 985 (6th Cir. 2000) (holding that under the totality of the circumstances, placing a cigarette pack in Plaintiff's tank top and brassiere without her consent and making two sexually offensive remarks toward her over a six-month period did not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment).

Applying the foregoing authorities, it is clear that Plaintiff has failed to make out a *prima facie* claim of a sexually hostile work environment against Days Inn. At best, Plaintiff presented

15

evidence of a single, unwelcomed, sexual advance. However, a single incident in which a co-worker requests Plaintiff to engage in sexual intercourse does not establish that Plaintiff was subjected to conduct that was sufficiently severe to create a hostile work environment. Therefore, the Court will GRANT Defendant's Motion for Summary Judgment on Counts I and III of Plaintiff's Complaint.

    C. <u>ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM UNDER TITLE VII.</u>

Section 704(a) of Title VII of the Civil Rights Act precludes retaliation by employers for two types of activities, "opposition" and "participation" activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

Plaintiff's retaliation claim in this case arises only under the "opposition" clause. To establish a *prima facie* claim of Title VII retaliation, a plaintiff must show that: (1) the plaintiff was engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If the plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-retaliatory reason for its actions. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792-793 (6th Cir. 2000). "If the defendant meets

its burden of production, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision." *Dixon*, 481 F.3d at 333 (internal quotations and citations omitted). However, the plaintiff bears the burden of persuasion throughout the process. *Morris*, 201 F.3d at 793.

Turning to the instant action, and viewing the facts in a light most favorable to Plaintiff, the Court finds that material issues of fact exist which preclude summary judgment on Plaintiff's retaliation claim.

To satisfy the first element of a *prima facie* case of retaliation against Days Inn, Plaintiff must establish that she was engaged in a protected activity. Opposition under Title VII includes, "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer-e.g., former employers, union, and co-workers." *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 579 (6th Cir.2000). Here, according to her testimony, Plaintiff complained to management about Yasser's conduct. Specifically she testified that she told both Yatim and Lazette that Yasser was sexually harassing her. Although Yatim and Lazette deny that Plaintiff ever complained to them about Yasser, no independent documentary evidence corroborates any of the witnesses' testimony. Therefore, an issue of credibility is presented which cannot be resolved via summary judgment.

The same credibility issues preclude a determination as to the second *prima facie* element, i.e., whether Defendant was aware that Plaintiff was exercising her protected right to oppose sexual harassment in the workplace. As indicated, Plaintiff claims she complained directly to members of Defendant's management staff, i.e. Mr. Yatim and Ms. Lazetee. But both of these individuals dispute Plaintiff's testimony.

17

As for the third element of a prima *facie claim* of retaliation -- showing that after the plaintiff's exercise of her protected right, the defendant took adverse employment action against her -- Plaintiff claims that after complaining about Yasser's conduct, she was terminated for "stirring up problems." Although Defendant now claims in seeking summary judgment that Plaintiff was never terminated and that she voluntarily resigned by failing to return to work after January 19, 2008, Defendant previously admitted -- both in its Answer to the Complaint filed in this action, and its Statement of Position filed with the EEOC -- that it terminated Plaintiff's employment for performance deficiencies. Clearly, issues of fact preclude summary judgment as to this element, as well.

The same is true of the fourth *prima facie* element, showing that there was a causal connection between the protected activity and the adverse employment action. In order to establish a sufficient causal nexus, a plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon*, 481 F.3d at 333 (internal quotations and citations omitted). In the instant action, Plaintiff alleges that she complained about the "make sex" incident on Saturday, January 14, 2008. Five days later, she returned to work and was allegedly informed by the housekeeping manager, Lazette, that she was being fired for "stirring up problems."

An employee's discharge "soon after" engaging in protected activity "is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation." *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 110 (1st Cir. 1988) However, proof of temporal proximity, between the protected activity and the adverse employment action, without more, is not sufficient to support a finding of a causal connection. *See Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007); *See also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724,

18

737 (6th Cir. 2006). But, "a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Nguyen v. City of Cleveland*, 229 F.3d 559, 565 (6th Cir. 2000)

Here, Plaintiff proffered evidence that she was discharged in very close proximity to her sexual harassment complaint. In addition, Plaintiff also introduced evidence that the defendant's reason for firing her was because she was "stirring up problems." [*See* Plaintiff's Dep.,38-39.] Because this statement is ambiguous, it does not amount to direct evidence of a causal connection. However, viewing the facts in the light most favorable to Plaintiff, this statement could reasonably be inferred to mean that Plaintiff was being fired because she complained about Yasser's conduct.[11] Therefore, the close temporal proximity of Plaintiff's termination coupled with defendant's explanation that Plaintiff was being fired because she was "stirring up problems" is sufficient to raise a material question of fact regarding the causal connection element.

Assuming for purposes of this Summary Judgment Motion that Plaintiff has met her burden of establishing a *prima facie* claim of retaliation, the burden of production shifts back to Defendant to articulate a legitimate business purpose for terminating Plaintiff's employment. While Defendant initially took the position that it fired Plaintiff for cause, it has abandoned that position in the instant motion. In Defendant's Answer and in its Statement of Position, Defendant claimed that it terminated Plaintiff because she "was for not showing up for work on time, taking long breaks that were not approved, and for poor performance in her housekeeping duties." [Plaintiff's Exhibit 2, Statement of Position, pp. 1-2.] However, Defendant's sole

---

[11] Nothing in the record suggests that Plaintiff caused any problems, aside from complaining about Yasser.

19

argument in its Motion for Summary Judgment was that it did not terminate Plaintiff, and therefore, her retaliation claim should be dismissed because there was no adverse employment action. These contradictory arguments are not sufficient to shift the burden of production back to Plaintiff. Under these circumstances, Plaintiff's failure to demonstrate pretext does not entitle the Defendant to summary judgment.

For all these reasons, the Court will DENY the Defendant's Motion for Summary Judgment on Count II of the Plaintiff's Complaint. Plaintiff's retaliation claim, therefore, will proceed to trial.

## CONCLUSION

For the forgoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Dkt. # 18]** is GRANTED, in part, and DENIED, in part. The motion is GRANTED as to Counts I and III of Plaintiff's Complaint, and these counts, accordingly, are dismissed with prejudice. However, Defendant's Motion is DENIED as to Count II.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: November 25, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 25, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager